COMPLAINT UNDER 42 USC §1983, CIVIL RIGHTS ACT-TDCJ-ID (Rev. 2/08)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
2012 DEC 28  PM 5:01

John Anthony Morin-1792300
Plaintiff's Name and ID Number

Mineral Wells Pre-Release Facility
Place of Confinement

SA12CA1228 OG
CASE NO.
(Clerk will assign the number)

v.

Bexar County Sheriff's Dept 200 N. Comal St. San Antonio, Tx. 78207-3505
Defendant's Name and Address

University Health System 4502 Medical Dr San Antonio, Tx 78229
Defendant's Name and Address

San Antonio Police Dept.
Defendant's Name and Address
( DO NOT USE "ET AL.")

## INSTRUCTIONS - READ CAREFULLY

NOTICE:

Your complaint is subject to dismissal unless it conforms to these instructions and this form.

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the Clerk of the United States Court for the appropriate District of Texas in the Division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. The list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate District Court, the Division and an address list of the Divisional Clerks.

**FILING FEE AND IN FORMA PAUPERIS**

1. In order for your complaint to be filed, it must be accompanied by the filing fee of $350.00.

2. If you do not have the necessary funds to pay the filing fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis (IFP)*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six (6) month history of your Inmate Trust Account. You can acquire the application to proceed IFP and appropriate Inmate Account Certificate from the law library at your prison unit.

3. 28 U.S.C. 1915, as amended by the Prison Litigation Reform Act of 1995 (PLRA), provides, "...if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." Thus, the Court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the Court will apply 28 U.S.C. 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your Inmate Account, until the entire $350 filing fee has been paid.

4. If you intend to seek *in forma pauperis* status, then do not send your complaint without an Application to Proceed IFP, and the Certificate of Inmate Trust Account. Complete all the essential paperwork before submitting it to the Court.

5. **The complaint can not exceed 20 pages which includes all attachments.**

**CHANGE OF ADDRESS**

It is your responsibility to inform the Court of any change of address and its effective date. Such notice should be marked "**NOTICE TO THE COURT OF CHANGE OF ADDRESS**" and shall not include any motion (s) for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I. PREVIOUS LAWSUITS:

   A. Have you filed *any* other lawsuits in state or federal court relating to your imprisonment? ___YES  X NO

   B. If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

   1. Approximate date of filing lawsuit: _____
   2. Parties to previous lawsuit:
      Plaintiff(s) _____
      Defendant(s) _____
   3. Court: (If federal, name the district; if state, name the county.) _____
   4. Docket Number: _____

2

5. Name of judge to whom case was assigned: _____

6. Disposition: (Was the case dismissed, appealed, still pending?)
_____

7. Approximate date of disposition: _____

II. PLACE OF PRESENT CONFINEMENT: Mineral Wells Pre-Release Facility 759 Heintzelman Rd Mineral Wells TX 76067

III. PARTIES TO THIS SUIT:

A. Name and address of plaintiff: John Anthony Morin currently at address II. After 1/7/13 - 8810 Flint Valley St San Antonio TX 78227

B. Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant #1: James Maddock 200 N. Comal St San Antonio, TX 78207

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Breaking window, kicked me when I was on the ground handcuffed

Defendant #2: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_____

Defendant #3: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_____

Defendant #4: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_____

Defendant #5: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_____

IV. STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

1. Unnecessary force was used during my arrest and I was not provided medical care in a timely fashion.

RELIEF: State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Remuneration for pain and suffering

V. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases:

Anthony Morin, John Morin, John Anthony Morin

B. List all TDCJ-ID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if known to you.

TDCJ-01792300, SID 04548683

VI. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?  ___YES  X NO

B. If your answer is "yes", give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

  1. Court that imposed sanctions (if federal, give the district and division): _____
  2. Case Number: _____
  3. Approximate date sanctions were imposed: _____
  4. Have the sanctions been lifted or otherwise satisfied?  ___YES  ___NO

4

C. Has any court ever warned or notified you that sanctions could be imposed?   ____YES  ✗ NO

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

   1. Court that imposed warning (if federal, give the district and division): _____

   2. Case Number: _____

   3. Approximate date warnings were imposed: _____

Executed on: December 29, 2012
            DATE

_Dennis Lee Hope for John Morin_
(Signature of plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
3. I understand that I must exhaust all available administrative remedies prior to filing this lawsuit.
4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire $350 filing fee and costs assessed by the Court, which shall be deducted in accordance with the law from my inmate account by my custodian until the filing fee is paid.

Signed this  Twenty ninth  day of  December , 20 12 .
            (Day)                    (month)      (year)

_Dennis Lee Hope for John Morin_
(Signature of plaintiff)

WARNING: The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limited to monetary sanctions and/or the dismissal of this action with prejudice.

STATUTORY DURABLE POWER OF ATTORNEY

I, John Anthony Morin, residing at 8810 Flint Valley Drive, in the city of San Antonio, in the County of Bexar, in the state of Texas as my permanent place of residence, appoint Dennis Lee Hape, my stepfather, residing at 8810 Flint Valley Drive, in the City of San Antonio, in the County of Bexar, in the State of Texas as my agent (attorney-in-fact) to act for me in any lawful way with respect to all of the following powers except for a power that I have crossed out below.

~~Real property transactions;~~
~~Tangible personal property transactions;~~
~~Stock and bond transactions;~~
~~Commodity and option transactions;~~
~~Banking and other financial institution transactions;~~
~~Business operating transactions;~~
~~Insurance and annuity transactions;~~
~~Estate, trust, and other beneficiary transactions;~~
Claims and litigation;
~~Personal and family maintenance;~~
~~Benefits from social security, Medicare, Medicaid, or other governmental programs or civil or military service;~~
~~Retirement plan transactions;~~
~~Tax matters.~~

(A) This power of attorney is not affected by my subsequent disability or incapacity.
~~(B) This power of attorney becomes effective upon my disability or incapacity.~~

I agree that any third party who receives a copy of this document may act under it. Revocation of the durable power of attorney is not effective as to a third party until the third party receives actual notice of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.
If any agent named by me dies, becomes legally disabled, resigns, or refuses to act, I name the following (each to act alone and successively, in the order named) as successor(s) to that agent: Virginia Lopez Hape, mother.

Signed this __3__ day of __October__, __2012__

State of __Texas__
County of __Bee__
This document was acknowledged before me on __October 3, 2012__ (date) by
_____
(name of principal)

_____
(signature of notarial officer)

_____
(printed name)
My commission expires: __11/12/2014__

JANET M. MARTINEZ
Notary Public, State of Texas
My Commission Expires
NOVEMBER 12, 2014

Notary without Bond

6

# Statutory Durable Power of Attorney

Notice: The Powers Granted By this Document are Broad and Sweeping. They are Explained in The Durable Power of Attorney Act, chapter XII, Texas Probate code. If you Have any questions About These Powers, Obtain Competent legal Advice. This Document Does Not Authorize Anyone to make Medical and other Health-care Decisions for you. You may revoke this power of Attorney if you Later wish to Do so.

I, John Anthony Morin, my Social Security number being 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, appoint Dennis Lee Hape Located at 8810 Flintvalley in San Antonio in Bexar County in the State of Texas, as my agent to act for me in any Lawful way with respect to the Following initialed Subjects:

- (A) real property transactions;
- (B) tangible personal property transactions;
- (C) Stock and bond transactions;
- (D) Commodity and option transactions;
- (E) banking and other Financial institutions transactions;
- (F) business operating transactions;
- (G) insurance and annuity transactions;
- (H) estate, trust, and other beneficiary transactions;
- ~~(I)~~ claims and Litigation;
- ~~(J)~~ personal and Family maintenance;
- (K) benefits from Social Security, Medicare, Medicaid, or other governmental programs or civil or military Service;
- (L) retirement plan transactions;
- (M) tax matters;
- (N) All of The Powers Listed in A-M

Unless you Direct otherwise above, This power of Attorney is Effective Immediately and will Continue until it is Revoked. ~~Should~~ Choose Alternative (A) If this Power of Attorney is to Become Effective on The Date it is Executed.

Choose one of the Following Alternative By crossing out The Alternative not chosen.
A) This power of Attorney is not effected by my disability Subsequent or incapacity.
B) This power of Attorney becomes effective once upon my disability or incapacity.

~~You Should choose Alternative (A) of This Power~~
~~If my agent is~~
If Neither (A) or (B) is crossed out, it will be Assumed that you chose Alternative (A).
I agree that any third party who receives a copy of this document may act under a Revocation of the durable power of attorney is not effective as to a third party until the third party receives actual notice of the revocation. I agree to

7

indemnify the third party for any claims made against the third party because of reliance on this power of attorney.

If any agent named by me dies, becomes legally disabled, resigns or refuses to act, I name the following (each to act alone and successively, in the order named) as successor(s) to the agent: Virginia Lopez Hape

Signed this 3rd day of October, 2012

State of Texas
County of Bee

_____ John A. Morin
Your Signature

Signed under oath before me on October 3, 2012, by John Morin, Respondent, personally known to me and/or identified by Texas Drivers License number _____.


JANET M. MARTINEZ
Notary Public, State of Texas
My Commission Expires
NOVEMBER 12, 2014
Notary without Bond

_____
Notary Public, State of Texas

I, the notary public whose signature appears above, certify that I am not an Attorney in this case.

_____

8

? register for misconduct.

## NOTICE TO THE COURT OF CHANGE OF ADDRESS

I will be released from the Mineral Wells Pre-Release Facility on January 7, 2013 and will be residing from that time forward at my parent's home located at:

8810 Flint Valley St.

San Antonio, TX 78227-2334

John Anthony Morin

#1792300

1) My name is John Morin and I am writing to explain my side of the events of December 30, 2010. I will also explain the process of my court proceedings and my court appointed attorney's actions.

2) On December 30, 2010, I was giving a friend a ride home after she arrived back from El Paso, TX and was messing with the radio going down I-10 while my friend was texting. I realized I was being pulled over so I decided to exit because I didn't think it was safe to stop at night on the freeway. As I exited it was still dark on the frontage road so after a couple of blocks I took a right and pulled into a well-lit parking lot on the side of a building. I asked my friend to call someone to pick her up and I was calling another friend to pick her up but there was no answer. I started to call my attorney and I had his business card in my hand as I was searching for my ID and insurance. I didn't have my ID and my friend and I were very nervous and she was very afraid. The officer started pounding on the car window and yelling at us, breaking the window. I had been assaulted by a police officer before so we were afraid to get out of the car. He reached through the back window and sprayed the side of my face with pepper spray. I kept trying to call my attorney but there was still no answer. My friend was still afraid to get out of the car while the officer kept yelling at us and again reached through the back window and sprayed her with pepper spray. At one point, I had a gun pointed at me and I was asked if I wanted to die.

3) I was pulled out of the car and pushed to the ground and handcuffed with my hands behind my back. I looked to my left and I could see my friend at the car and as I looked to the right, I could see a boot coming towards me and then blacked out for a minute. When I came to, I groaned and could hear the tall blonde officer standing over me say "Hurts, don't it?" In the video, you can see me lying down on the ground with my head just out of camera range and right before he said that on the video, you can hear me say "Ow" and my leg raised up as if something had happened just out of camera range. Both my right eye and right ear felt numb.

4) EMS came on the scene and washed my eye out from the pepper spray but I could still feel something in it which I thought may have been dirt at the time. As I was being put in the back of the police car, I could feel my eye starting to swell up and could barely see. I realized that my left eye was being scratched because I had glass inside my eyelid. I was angry because of what the officer did to me and I told him he screwed up. I was not going to get violent because that would have just made it worse for me. To keep from getting more angry, I started laughing and making jokes.

5) I could feel both of my eyes starting to swell shut and when I was pulled out of the police car I couldn't see where I was and when we entered the doors I started to roll my left eye so I could move the glass and found that I wasn't at the hospital but at the Bexar County Jail. I questioned why I was brought there instead of the hospital but was given no answer and was sat down in a chair near the medical area and left there. I was starting to get adjusted to the glass in my eye but it was still scratching and I afraid of going blind in my left eye. I couldn't see anything anymore because both my eyes were now swollen shut. I started to yell that I needed medical attention because of the glass in my eye and banging my chair on the floor. At that point I felt a blunt force to the right side of my forehead and I fell to the ground. When I was picked up and set back down, I tried to open my left eye the best I could I saw a guard standing in front of me examining me and I told him I wanted to go to the hospital. He said "Take him to the f-----g hospital." I was put into a patrol car and taken to the hospital. When we arrived, I was met by 4 personnel with a gurney and asked if I knew where I was, where I lived, if I had insurance, where I worked, and personal contact numbers. They finally removed my handcuffs and I was put on the gurney. I was taken to the ER and asked medical questions. I

was cleaned up from all the blood from the cut on my forehead and was asked to take off my clothes and put on a hospital gown. As I folded my bloody shirt, I said that I couldn't believe my favorite $125 shirt was ruined, full of blood. I finished folding it and put it in a brown bag with my other clothes. They hooked me up to an IV with saline and I was taken for a cat scan of my head. Then they started working on my left eye and pulled out some glass and said there were 3 pieces and I could see I bit better. I could make out the face of the guard that was standing at the door and when they said that his eyes got real big and he went white like he saw a ghost.



Around 7 AM the nurse came around to take a blood sample. She swabbed me with alcohol and took the sample. Then the officer told her he also needed a sample to take back and she said she was sorry but the samples she was taking were just for the hospital and not for him, that she didn't work for him. He lead her out of the room and she came back about 45 minutes later and said that she was sorry but that she would have to take a sample for him as well. I told her it was okay although I felt it was against my Constitutional rights but that I knew she was just doing her job. I was there until 7 PM and then transported back to the Bexar County Jail. I was given my brown bag to take back with me and I noticed the shirt was not in the bag. I spent 30 days in the jail and had my first court date on February 4, 2011. When I got to court, Patrick Montgomery, my court appointed attorney, had my case folder and asked me to read the police report. Some parts of it read correctly but the arresting officer wrote that he went to the cell he had put me in and saw me on my knees, washing my face with water from the toilet bowl. He wrote that he had walked in and asked me to get up, then reached down to pull me up and as he did, he and I slipped and as we went down I hit my head on the edge of the toilet bowl and he fell on his right side and was sore the next day. Mr. Montgomery did not believe the story they had written there and asked for the video. He got the court date reset and my bond lowered and I was able to get out on bail. I had my court date reset again because I was still trying to get hold of the video but they said they couldn't find it. Patrick Montgomery was trying to get me to take the plea bargain but I would not agree and he kept getting angry. On April 13, 2012 the judge told me it was D-Day and I asked Mr. Montgomery how they could take me to trial without my being able to see the video and I still had not been indicted.



Mr. Montgomery showed up the next Monday with a copy of the disk so I finally was able to see it and made a copy of it on my cell phone from the monitor. I took the plea because Mr. Montgomery said that he didn't think I had any choice. I tried to get my case reset so I could hire a proper attorney because I did not have any confidence that Mr. Montgomery had my best interests at heart. He kept going over to the prosecutor and whispering in his ear but it didn't work and I had to continue with Mr. Montgomery. I finally got copies of the police report but I was shocked because it was different from what I had read back in February of 2011. All this time that we were going back and forth, Mr. Montgomery looked it over and never said a word. I was given 3 years by the judge who said that he didn't need to see the video and that he had enough information just from the report. He also knew that I was going to the FBI about the way I had been treated during the arrest.



I can't understand how the police or the prosecutor could change the report and also why my court appointed attorney never said anything about the changes. I had also asked him to help me call a friend of his that was trying to find 2 civil rights attorneys but he never returned my friend's calls.

We are requesting subpoenas for the following:

① All photos that were taken by the police department at scene and the hospital

② All police (SAPD + Sheriff Dept.) videos from vehicle cameras at the scene

③ All police and medical reports, handwritten + computer of all changes with dates and times along with what changes were done. All reports done by the arresting officer, witness officers (both sheriff + SAPD) medical personnel. All statements from the arresting officer, his backup and the nurse who wrote the medical report.

④ All police officers and medical staff who were involved dealing with my case on the night of Dec. 30, 2010.

12